IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARION H. PARHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 7773 |
| v. ) | |
| ) | Maria Valdez, |
| JO ANNE BARNHART, ) | Magistrate Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 1383(c)(3) to review the final decision of the Commissioner of Social Security denying Plaintiff Marion H. Parham's ("Parham") claim for supplemental security income benefits, requested under Title XVI of the Social Security Act. On January 26, 2005 and February 17, 2005, the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Before the Court are Parham's and Defendant Jo Anne Barnhart's (the "Commissioner") cross-motions for summary judgment.[1] For the reasons provided below, Parham's motion is granted in part while the Commissioner's is denied in its entirety.

### Background

Beginning on July 15, 1980, Parham alleges that he became disabled as defined under the

---

[1] *See Johnson v. Chater*, 969 F. Supp. 493, 498 n.2 (N.D. Ill. 1997) (noting that "[a]lthough both parties have moved for summary judgment, we do not apply the familiar summary judgment standard of 'genuine issue of material fact' employed under Rule 56" and correctly observing that courts reviewing social security cases essentially treat a claimant's motion for summary judgment as one seeking an order reversing the Commissioner's earlier decision and the Commissioner's cross-motion as one seeking an affirmation of that decision).

-1-

Social Security Act as a result of a mental retardation. (R. at 171.) On May 2, 2002, Parham applied for supplemental security income and on September 6, 2002 the Social Security Administration (the "Administration") denied his claim. (R. at 115.) Thereafter, on October 24, 2002, Parham filed a request for reconsideration, which was denied on November 14, 2002. (R. at 119-20.) After receiving notice of the Administration's denial of reconsideration, on December 12, 2002, Parham filed a request for a hearing by an administrative law judge ("ALJ"). (R. at 124.)

Accompanied by his mother as well as his attorney, Parham's hearing took place on March 25, 2003. During the hearing, Parham testified as to his educational background, which consisted of special education, with the last grade attended being the ninth grade. (R. at 39-40.) The ALJ's inquiry of Parham revealed that he has only a limited ability to read and write, does not shop without the assistance of another, nor does he drive. (R. at 39-46.) Moreover, Parham testified briefly regarding his stay from 1998 to 2002 with the Illinois Department of Corrections for theft and drug charges. (R. at 40.)

After testifying generally about his background and daily functioning, Parham discussed his work history. His past work included, but is not limited to, serving food for the Veteran's Administration, janitorial work at a naval base as well as the Waukegan Park District, clothes laundering and working at a car wash. (R. at 48-50.) Parham's employment history is similar in at least one respect: Parham worked in all positions only briefly. Indeed, Parham's supervisors terminated him for such reasons as an inability to follow directions and for not working fast enough. (R. at 62.)

Thereafter, Parham's mother, Barbara Neah Parham, testified as well as Lee Knutson, a vocational expert. Parham's mother noted that with the exception of Parham's incarceration, he has

been living with her for the entirety of his life. (R. at 76.) When asked about the extent of Parham's help around the house, Barbara Parham testified that he rarely performs chores, and when he does chores, does so incompletely, noting that "his mind just goes blank." (R. at 87.) As for Knutson's testimony, after reviewing Parham's file and hearing his work history testimony, Knutson classified Parham's previous work as "unskilled". (R. at 93.) And, in response to various hypothetical limitations based on Parham's residual functional capacity, Knutson pointed to employment possibilities to include janitor, bagger, assembler or packer. Following Knutson's testimony, the ALJ concluded the hearing.

As noted above, on April 25, 2003, the ALJ issued his decision, therein finding that Parham was not eligible for supplemental security income under the Social Security Act. (R. at 27.) In conducting his analysis under the five part test for disability set forth in 20 C.F.R. § 416.920(a)-(f), the ALJ paused at Step Three, which requires the ALJ to determine whether the impairment meets or medically equal a list of specific impairment set forth in regulations. Here, the ALJ found that Parham's "condition does not satisfy this standard." (R. at 20.) Citing section 12.05 of the regulations, the ALJ noted that "section 12.05 requires the presence of sub-average intellectual functioning, with associated deficits in adoptive functioning, which are initially manifested during the developmental period (i[.]e., prior to age 22)." Immediately thereafter, the ALJ set forth that "[w]hile evidence of the former is present of record, the latter elements are not so evidenced." (R. at 20.)

In reviewing the "latter elements," the ALJ wrote that Parham's school records - on which Parham presently relies on in seeking relief - "while revealing grade year repetitions and poor grades, do not reflect on-going deficits in adaption relative to any specific areas of development including

-3-

social, behavioral and/or self care." (R. at 20.) And, after discussing Parham's work history prior to his twenty-second birthday, the ALJ brought attention to Parham's work (1) at a nursing home laundry room (for which he "was reportedly terminated for not working fast enough"), (2) at Silo (for which he was terminated for failing to disclose a felony conviction), as well as (3) at Lazy Boy (for which Parham "left employment due to problems in understanding directions (i[.]e., as to the manner of moving things)"), the ALJ nevertheless concluded that "[b]y reason of the foregoing, the instant record is not indicative of adaptive deficits which had manifested prior to age 22 (i[.]e., prior to October 10, 1996)" such that "[l]isting 12.05 is, accordingly, not met or medially equaled, nor is any other listing provision." (R. at 20-21.)

Continuing his analysis under Step Three, the ALJ evaluated "four broad functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation." (R. at 21.) He found that Parham "has a mild limitation as to activities of daily living, and moderate limitations as to social functioning, maintaining concentration, persistence and pace, with no presence of decompensation episodes (R. at 21.) And, the ALJ determined Parham's residual functional capacity as set forth below:

> [A]lthough having the capacity to perform a full range of work at all exertional levels, he does not possess the capacity to read to write simple English, but retains the capacity to use basic numbers (add/subtract). He does not possess the capacity to understand, recall, focus upon, attend to or carry out complex or detailed instructions or to focus upon, attend to or perform complex or detailed tasks, but retains the capacity to understand, recall, focus upon, attend to any carry out short simple instructions and to focus upon, attend to and perform simple repetitive tasks at a sustained workmanlike pace; he may not perform work which requires more than incidental contact with members of the general public; may not perform work which requires that he work in direct concert with co-employees in the performance of mutual projects or jointly assigned tasks, but retains the capacity to perform simple repetitive tasks assigned to him as an individual and to do so in the proximity of co-workers; he may not perform work which requires that he independently set work goals or schedule work activities; and, may not perform work which requires frequent

change in work settings, environments, practices or procedures.

(R. at 21-22.) And, turning to the medical evidence presented, the ALJ noted that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations" as "the medical findings do not support the existence of limitations greater than those reported above." (R. at 23.)

After the ALJ issued his decision that Parham was not eligible for supplemental security income under the Social Security Act, *see* R. at 27, the Social Security Administration's Appeals Council denied Parham's request to review the ALJ's April 25th decision, thereby creating a final decision of the Commissioner. Thereafter, on December 1, 2004, Parham filed suit with the U.S. District Court for the Northern District of Illinois. With this background in mind, the Court turns to the issues presented.

## **Legal Standard**

The Court reviews the ALJ's "decision to deny benefits to determine whether it was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (citing *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where an ALJ's findings are supported by substantial evidence, this Court must affirm his or her factual findings, but where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). Moreover, in reviewing the ALJ's decision, the

Court "will not 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner.'" *Rice*, 384 F.3d at 369 (quoting *Lopez*, 336 F.3d at 539). Finally, "while the ALJ must have built a logical bridge from the evidence to his conclusion[, the Court] will nonetheless give the opinion a commensensical reading rather than nitpicking at it." *Id.* at 369 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)) (internal citations and quotations omitted).

## Analysis

According to the Social Security Act, a claimant is disabled if he has the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In determining whether a claimant is "disabled," an ALJ considers the following five questions in order:

1. Is the claimant presently employed?
2. Does the claimant have a severe impairment?
3. Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). If the ALJ reaches an affirmative answer at either Step Three or Step Five, a claimant is disabled. *Young v. Sec'y of Health & Human Servs.* 957 F.2d 386, 389 (7th Cir. 1992). But, if the ALJ reaches a negative finding at any step other than Step Three, he or she is precluded from a finding of disability. *Id.* Thereafter, once the claimant shows that he or she is unable to perform past work, the burden shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

In moving for summary judgment, Parham focuses his arguments on the ALJ's opinion

regarding Step Three. Focusing his analysis on section 12.05(B) of the listings, he requests this Court to find him "disabled and medically eligible to receive Supplemental Security Income benefits" or alternatively for a remand for further proceedings. (Pl.'s Mem. Supp. Summ. J. 10.) He argues that the ALJ's decision is not supported by substantial evidence because he suffers from "significantly subaverage general intellectual functioning," as evidenced by "the results of testing performed at the Commissioner's request, and from records of Parham's school performance." (*Id.* at 4.) Thus, the ALJ's reason for rejecting his claim, i.e. that the ALJ "found no evidence of adaptive functioning initially manifested prior to age 22," is incorrect as "[t]he evidence directly establishes deficits of adaptive functioning in the areas of functional academic skills and work prior to Parham's twenty-second birthday." (*Id.* at 6.) Specifically, Parham cites to his school performance records and the IQ test administered by Dr. William W. Lee. (*Id.* at 4.)

In response, the Commissioner argues that "the record does not establish that [Parham] met all the criteria of Listing § 12.05B." (Def.'s Mem. Supp. Mot. Summ. J. at 7.) In so arguing, the Commissioner contends that Parham's claim fails for a number of arguments. First, the Commissioner argues that, as a prerequisite, Parham must show that he was diagnosed with mental retardation, which she argues he cannot. (*Id.* at 7-8.) Second, the Commissioner appears to challenge the validity of Parham's test scores, noting that "Dr. Lee, who administered the June 2002 IQ test, suggested that these IQ scores were not valid, stating that Plaintiff's test scores should be used in caution, in light of Plaintiff's poor comprehension, limited effort and possible alcohol use prior to the assessment." (*Id.* at 8 (citing R. at 215).) Finally, the Commissioner argues that substantial evidence exists supporting the ALJ's finding that Parham could nevertheless work despite his limitations. (*Id.* at 11.)

As claimant, Parham "bears the burden of proving that his condition meets or equals a listed impairment." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) (citing *Steward v. Bowen*, 858 F.2d 1295, 1297 n.2 (7th Cir. 1998)). One such listed impairment, relevant for purposes of the present analysis, is mental retardation, which is set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Id.* "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *Id.* Under Requirement B, a claimant must show that he or she has "[a] valid verbal, performance, or full scale IQ of 59 or less." *Id.*

"To establish a disability of mental retardation under section 12.05(B), a claimant must only establish '[a] valid verbal, performance, or full scale IQ of 59 or less' [and thus] under § 12.05(B) of the guidelines, [the claimant] is entitled to social security benefits if he can prove: (1) he has a valid [Wechsler Adult Intelligence Scale] test score showing his IQ is 59 or less; and (2) his IQ was 59 or less before he reached age 22." *Holmes v. Apfel*, No. 98 C 5087, 1999 WL 731769, at *4 (N.D. Ill. Aug. 31, 1999) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B)). Moreover, the listings explain that if a claimant's "impairment satisfies the diagnostic description in the introductory paragraph [of section 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing" and add that "Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity *without any additional assessment of functional limitations.*" 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A) (emphasis added). *See also Rivera v. Apfel*, No. 98-CV-0619EF, 2000 WL 1568596, at

*3 (W.D.N.Y. Sept. 29, 2000) (finding an ALJ's opinion in error when "[a] review of the evidence shows that plaintiff is mentally disabled within the meaning of listing 12.05(B)" because her "Full Scale IQ of 58 is below the threshold set by listing 12.05(B)" and "there is no medical evidence of record contradicting the veracity of this score."). In light of this guidance, the Court remands the case for further proceedings.

First, the ALJ has not set out a "logical bridge" regarding his treatment of Parham's IQ test scores. Indeed, it is unclear whether the ALJ found Parham's IQ test scores as valid or invalid. (*See generally* R. at 19-27.) While the Commissioner presently argues that Parham's test scores are invalid, it is unclear whether the ALJ reached a decision on the validity of those scores. Instead, the ALJ merely noted Parham's test scores, then appears to incorporate the portion of Dr. Lee's opinion in which he opined that Parham's test scores should be viewed with caution in light of Parham's "poor comprehension, limited effort and the possible consumption of alcohol." (R. at 23.) However, viewing IQ test scores "with caution" is far from an unequivocal statement that such scores are invalid. Thus, a remand is necessary to determine whether Parham's test scores were valid. And, if the ALJ felt that Parham's test scores were skewed by alcohol consumption, the ALJ should have developed the record further and ordered additional testing. *See Evans v. Massanari*, No. 00 C 5043, 2001 WL 969083, at *12 (N.D. Ill. Aug. 22, 2001) ("Given Plaintiff's apparent mental impairments, not with standing his lack of cooperation, this Court believes Plaintiff should be given the opportunity to undergo an additional psychological evaluation" and adding that the "Plaintiff should be informed that his failure to cooperate to the best of his ability may result in an adverse

determination.")[2] Or, if the ALJ found that Parham's IQ score was invalid as inconsistent with the record, he should have so explained. *See Winfield v. Barnhart*, 269 F. Supp. 2d 995, 1007 (N.D. Ill. 2003) (noting that an "ALJ did not err in finding that the Claimant's IQ scores were inconsistent with the record, as nothing in the record or the expert testimony supported the scores validity").

Second, and contrary to the guidance provided in section 12.00(A), the record is clear that the ALJ assessed Parham's functional limitations in analyzing Parham's claim under section 12.05(B). Specifically, the ALJ noted that he found that Parham's "functioning levels under the "B" criteria of sections 12.05 and 12.09 are as follows: The Claimant has a mild limitation as to activities of daily living, and moderate limitations as to social functioning, maintaining concentration, persistence and pace as more fully set forth in the residual functional capacity (RFC) below." (R. at 21.) Moreover, it appears that the ALJ again considered Parham's functional capacity when he noted that "[t]he claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."[3] (R. at 24.) Accordingly, on further review, the ALJ should not consider Parham's functional levels in conducting an analysis under section 12.05(B).

Finally, the Court notes that the ALJ's statement on a critical issue lacks evidentiary support. Specifically, the ALJ noted that Parham's school records, which are relevant for purposes of section 12.05 for the determination of whether Parham's impairment began before age 22, "contain no IQ

---

[2] Though not relevant for purposes of considering the appropriateness of a remand, and without the benefit of an education in developmental psychology, the Court notes its belief that Parham's "poor comprehension" and "limited effort" appear to be anticipated behaviors of an individual with a IQ scores ranging from 50 to 56.

[3] The Court does not preclude the ALJ from considering Parham's functioning generally, but rather specifically as applied to his analysis of section 12.05(B). Indeed, if on remand the ALJ still finds that Parham is unable to meet section 12.05(B), the ALJ is expected to take such functioning into consideration.

*or other testing information* and reflect no other specific deficiencies." (R. at 23 (emphasis added).) But, as found on Page 246 of the record, school officials administered to Parham the Peabody Picture Vocabulary Test, which noted Parham's "Mental age" as two years and eleven months, two full years behind his chronological age of four years and eleven months. Indeed, such test results would clearly assist the ALJ in determining the onset of Parham's impairments. And, such results should be taken into consideration along with Parham's IQ score (or any subsequent IQ testing, if ordered). *See Holmes*, 1999 WL 731769 at *5 (noting that the Administration's "regulations expressly define mental retardation as a 'lifelong condition' [such that] an IQ score is presumed to accurately reflect an individual's IQ throughout that person's entire life, regardless of the individual's age when the IQ test is administered") (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B)(4)). Thus, because it is unclear whether he considered the effect of that test in determining whether Parham's mental impairments existed prior to age twenty-two, a remand is necessary.

## Conclusion

For the reasons provided above, the Court remands the case to the ALJ for further review consistent with this opinion. Accordingly, the Court grants in part Plaintiff's motion for summary judgment [Doc. No. 11] as to the extent it requests a remand and denies Defendant's motion for summary judgment [Doc. No. 15] in its entirety.

**SO ORDERED.**  **ENTERED:**

Dated: __AUG 1 4 2006__

HON. MARIA VALDEZ
United States Magistrate Judge

-11-